IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| ELIA BAROCIO | ) | |
| and LUIS A. ALVAREZ, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 120267C |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appeal Defendant's May 23, 2011, Notice of Deficiency Assessment for the

2010 tax year. At issue is Plaintiffs' entitlement to the working family child care credit (WFC).

Trial in the matter was held in the Oregon Tax Court courtroom, Salem, Oregon, on

December 12, 2012. Elia Barocio (Barocio) appeared and testified for Plaintiffs. Kyle Quiring

(Quiring), Tax Auditor, Department of Revenue, appeared and testified for Defendant.

Plaintiffs' Exhibits 1 through 10 and Defendants Exhibits A through D were received

without objection.

## I. STATEMENT OF FACTS

The following facts were presented at trial and most were either mutually agreed upon or

uncontested. Plaintiffs have two children; Ariana Villa, born April 23, 2004, and Lorena

Alvarez, born June 15, 2010. Plaintiffs both worked outside the home in 2010; Barocio worked

Monday through Friday and Luis Alvarez (Alvarez) Tuesday through Saturday. Plaintiffs

reported paying $6,000 for child care in 2010.

Barocio testified that the payments were made in cash and that the childcare provider was

her father, who was not employed in 2010. According to her testimony, Barocio typically

dropped her children off at her father's home around 7:00 a.m. on her way to work and picked them up at her father's home in the afternoons around 4:00 p.m. For the first six months of the year, Plaintiffs report payment of $200 per month for their daughter Ariana because she was only being cared for part of the day and Lorena was not yet born. Barocio testified that Ariana was in either first or second grade in 2010 and in school except for "a couple of hours in the morning," and again from about 2:30 p.m. to 4:00 p.m. in the afternoons. Their second child Lorena, born June 15, 2010, was watched by Barocio's father beginning in July 2010. Plaintiffs reported paying $600 per month for childcare of Lorena from June through December 2010.

Plaintiffs' trial presentation relied primarily on three exhibits. The first is a handwritten payment report, which shows payments of $200 per month for Ariana for the months of January through December 2010 in one column and payments of $600 per month for Lorena for the months of July through December 2010. (Ptfs' Ex 7.) Barocio testified that Plaintiffs' Exhibit 7 was "prepared" by her father. Quiring brought out on cross-examination that that Plaintiffs' Exhibit 7 is not signed by the provider. However, later in her testimony, Barocio stated that her father was illiterate, a factor which made it difficult for him to get a job. That, of course, raises the obvious question of how Barocio's father prepared the handwritten payment report or ledger. Moreover, Barocio also testified that she paid her provider in cash because she did not have a checking account. When queried by the court, Barocio explained that she had no checking account because she divorced years ago, that there was a judgment against her, and that if she had a checking account "they would just take the money." The fact that Barocio would choose not to have the checking account in order to avoid the satisfaction of a judgment undermines her credibility.

/ / /

Plaintiffs' second evidentiary document is a three-page exhibit consisting of handwritten receipts reflecting cash payments of either $200 per month (January through June) or twice monthly cash payments of $400 (July through December).[1] (Ptfs' Ex 8.) The court notes that the handwriting on the 18 receipts in Plaintiffs' Exhibit 8 appears to match the handwriting in Exhibit 7.

The third exhibit Plaintiffs relied on at trial is a 12-page printout of payments from a Wells Fargo checking account belonging to Alvarez. (Ptfs' Ex 9.) The dates and amounts of certain marked withdrawals match the dates and amounts allegedly paid for childcare as reflected on the handwritten receipts Plaintiffs submitted into evidence as Plaintiffs' Exhibit 8. Quiring cross-examined Barocio about whether the printed bank statements had been altered in any manner. Barocio responded that neither she nor anyone else altered those documents. Quiring then testified that, in his opinion as a former bank employee who worked for Wells Fargo for three years (from 2004 through 2007) prior to going to work for the Department of Revenue, the statements appear to be altered in that the dollar amounts appearing in the "Withdrawals / Subtractions" column on the right seemed to be either tilted or not in alignment with all of the of the numbers in that column. (*See* Ptfs' Ex 9; *see also* Def's Ex A.) Both parties marked the questioned transactions. As two examples, Quiring testified that the $400 withdrawal on December 20, 2010, seemed to be shifted to the right farther than any other number on that page, and that the October 20, 2010, withdrawal was obviously tilted or angled, while all of the other numbers are more or less perfectly aligned horizontally. (Ptfs' Ex 9 at 1, 3; Def's Ex A at 1, 3.) The court concurs that those two anomalies exist, and that at least some of the other withdrawals

---

[1] There is one variation in the twice monthly payment regime reflected by the photocopied receipts. Receipt 552129 reflects a payment of $400 on November 17, 2010. There is no receipt for another payment in November. However, there are receipts for three $400 payments in December, the second of which, dated December 20, 2010, indicates above the receipt that it was "LATE." (Ptfs' Ex 8 at 3) (emphasis in original.) Presumably one of the three December payments was a late payment for November.

have similar peculiarities that could suggest they had been altered. However, the size and style of the font appears similar to the font used throughout the 12-page exhibit Plaintiff submitted. (Ptfs' Ex 9.)

## II. ANALYSIS

The issue in this case is whether Plaintiffs are entitled to claim $6,000 in child care expenses for purposes of the WFC. The Plaintiffs have the burden of proof to show by a preponderance of the evidence that the payments were made, in the amounts claimed, for qualifying child care. ORS 305.427.[2] This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). As such, the court will consider each of the three main pieces of evidence relied on by Plaintiffs.

Plaintiffs' Exhibit 7 purports to show a ledger of payments received by the childcare provider, prepared by the childcare provider, Barocio's father. As brought out by Quiring, the document is not signed. The handwriting appears to match the handwriting in Plaintiffs' Exhibit 8. (*See* Ptfs' Exs 7-8.) Plaintiffs' Exhibit 8 is a purported list of receipts for the childcare. It can be assumed that the receipts and the ledger would both be written and provided by the person giving the childcare. However, Barocio testified that her father was illiterate and "can't read or write." The court finds it unlikely that the ledger or receipts were prepared by the childcare provider. Barocio's father did not testify. Accordingly, Barocio's testimony about those exhibits is suspect, and the court affords the exhibits little weight.

Plaintiffs' third piece of evidence is a printout of bank statements showing withdrawals of cash allegedly taken to pay for the childcare. Again, there are issues with the evidence. Most

---

[2] All references to the Oregon Revised Statutes are to 2009 unless otherwise indicated.

of the dollar entries related to the withdrawals for childcare appear to have been altered in some way because they do not conform to the rest of the document. Some of the childcare entries are shifted to the left while the rest of the account entries are shifted to the right. (*E.g.*, Ptf's Ex 9 at 1.) Other childcare entries are slanted and do not conform to the uniform straight line formatting of the rest of the document entries. (*E.g.*, *id.* at 2-3.) Finally, other withdrawal entries for childcare do not have the same spacing between the dollar sign and dollar amount (number) as the other entries. (*E.g.*, *id.* at 6.) These inconsistencies only appear on the purported withdrawals of cash to pay for childcare.

Barocio testified that she paid by cash because she did not have a checking account and later testified that she did not have a checking account because she was trying to avoid payment of a previous judgment against her. In addition to the credibility issues raised by that testimony, Plaintiffs' Exhibit 9 contradicts the testimony that she did not have a checking account. While the account may have been in Alvarez's name, Barocio at least had access to the account to make withdrawals to pay for the childcare. This suggests that Barocio could have paid by check if she chose to do so and that the purported cash payments were by choice, not lack of a checking account. Plaintiffs' have also provided only the withdrawals from the account, not the deposits. There is also not any running balance information. Barocio testified that only withdrawals were provided to save paper. However, without the deposit history as well as the withdrawal history it is not possible to verify the amounts withdrawn and that the statement has not been altered. Given the numerous issues with the exhibit, the court places no weight on it.

On the whole, Plaintiffs' evidence and testimony was incomplete, contradictory, and unpersuasive. Plaintiffs' three main pieces of evidence, the ledger, the receipts, and the bank statements, all have significant issues impacting the weight the court affords them. Barocio's

testimony was contradictory and not entirely credible. Plaintiffs bore the burden to prove by the greater weight or more convincing evidence (*i.e.*, preponderance) that the amount of expenses reportedly paid for childcare in 2010 were actually paid in order to receive the WFC. Plaintiffs have not met that burden. Barocio's father probably watched the two children, although his testimony would have been helpful on that issue. The court is less certain Plaintiffs paid Barocio's father the amounts claimed, if they paid him at all. Barocio's explanation for allegedly paying her father in cash rather than by check – avoiding possible liability for a previously entered judgment against her – undermines her credibility. Additionally, if Barocio was able to make cash withdraws from Alvarez's checking account to pay for the childcare, she presumably could have paid for the care by check.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiffs failed to carry their burden of proof regarding the disputed 2010 childcare payments. Accordingly, Defendant's denial of the WFC Plaintiffs claimed on their 2010 return, is upheld. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of January 2013.

DAN ROBINSON
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Dan Robinson on January 15, 2013.*
*The court filed and entered this Decision on January 15, 2013.*